UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
- - - - - - - - - - - - - -

UNITED STATES OF AMERICA,

        Plaintiff,

    v.

BRENT MICHAEL EDINGTON,

        Defendant.

_____/

No. 2:19-cr-000008

Hon. ROBERT J. JONKER
Chief U.S. District Judge

Hon. PHILIP J. GREEN
U.S. Magistrate Judge

## PLEA AGREEMENT

This constitutes the plea agreement between Defendant BRENT MICHAEL EDINGTON and the United States Attorney's Office for the Western District of Michigan. The terms of the agreement are as follows:

1. <u>Defendant Agrees to Plead Guilty</u>. Defendant agrees to plead guilty to the Superseding Information. The Superseding Information charges Defendant with giving a false certificate or writing to the Farm Service Agency, in violation of Title 18, United States Code, Section 1018.

2. <u>Defendant Understands the Crime</u>. For Defendant to be guilty of violating Title 18, United States Code, Section 1018, the following must be true:

(1) defendant was authorized by any law of the United States to make and give a certificate or other writing;

(2) defendant knowingly made and delivered as true a false writing; and

(3) defendant knew the writing was false at the time he made and delivered it.

Defendant is pleading guilty because Defendant is guilty of the charge described above.

3.    <u>Defendant Understands the Penalty</u>.  The statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 1018, is the following:

| | |
|---|---|
| Imprisonment: | 1 year; |
| Supervised Release: | 1 year; |
| Probation: | 5 years; |
| Fine: | $100,000; and |
| Special assessment: | $25. |

Defendant agrees to pay the special assessment at or before the time of sentencing unless Defendant affirmatively demonstrates to the Court that Defendant lacks the ability to pay.

4.    <u>Proceedings Before a United States Magistrate Judge</u>.  Defendant hereby acknowledges the following: that he understands the federal charge against him and the possible penalties; that he desires to enter a plea of guilty pursuant to this plea agreement; that because the Superseding Information involves a misdemeanor offense, punishable by less than one year imprisonment, a United States Magistrate Judge will conduct the plea hearing and sentencing in his case.

5.    <u>Exclusion from Participation</u>. Defendant agrees that he will be excluded from participating in or receiving benefits from any federal procurement transaction in accordance with 2 C.F.R. § 180.1020(a) and 7 U.S.C. § 2209j(a) for a

period of one (1) year.  This means that Defendant will be excluded from participating in most procurement and non-procurement programs and activities unless such program is exempted under 2 C.F.R. § 417.215.  This exclusion includes the USDA Risk Management Agency and the Farm Service Agency.

6.     <u>Discretionary Restitution (VWPA)</u>.  Defendant agrees to make full restitution for the losses caused by his activities.  The parties recognize and agree that the amount of restitution will be determined at the time of sentencing.  Defendant acknowledges that any payment plan set by the Court does not prohibit the United States from collecting restitution beyond the installments set forth in the payment plan, until restitution is collected in full.  Defendant agrees to fully and truthfully complete a Financial Disclosure Statement and to submit the statement to the Financial Litigation Unit of the U.S. Attorney's Office within thirty days of executing this agreement.

7.     <u>Supervised Release Defined</u>.  Supervised release is a period of time following imprisonment during which Defendant will be subject to various restrictions and requirements.  Defendant understands that if he violates one or more of the conditions of any supervised release imposed, he may be returned to prison for all or part of the term of supervised release, which could result in Defendant serving a total term of imprisonment greater than the statutory maximum stated above.

8.     <u>Asset Forfeiture and Financial Accountability.</u>  Defendant agrees to disclose to law enforcement officials the whereabouts of, Defendant's ownership

3

interest in, and all other information known to Defendant about, all assets, money or property of any kind, derived from or acquired as a result of, or used to facilitate the commission of, Defendant's illegal activities. Defendant further agrees to forfeit all rights, title, and interest in and to such items.

Defendant agrees not to make any double jeopardy or collateral estoppel challenge to any administrative or civil forfeiture actions arising out of the course of conduct that provides the factual basis for the Superseding Information. Defendant further agrees not to make any challenges to the charges in the Superseding Information or to the imposition of a sentence for the offenses covered by this plea agreement, based upon any pending or completed administrative or civil forfeiture actions. Defendant further agrees that the forfeiture of assets described above shall not be counted toward satisfaction of any special assessment, fine, restitution, or any other penalty the Court may impose.

9.  <u>Factual Basis of Guilt</u>. Defendant and the U.S. Attorney's Office agree and stipulate to the following statement of facts which need not be proven at the time of the plea or sentencing:

In March 2012, Defendant and his spouse applied for a farm operating loan from the Farm Service Agency ("FSA"). As a part of the application process, Defendant filled out and submitted a Farm Business Plan Worksheet ("Worksheet"). The Worksheet assisted the FSA in determining loan feasibility and planning. Defendant listed in the Worksheet farm equipment, crops, and livestock pledged as collateral for the loan, if approved. On April 24, 2012, the FSA approved

the application for two loan amounts on the condition that certain requirements set out in the Notification of Loan Approval and Borrower Responsibilities were met. Four of the numerous requirements were: 1) the FSA will have first lien on all chattel currently owned and to be purchased with loan proceeds; (2) the borrowers will sign a FSA 2028 form ("Security Agreement") to properly secure the loans; (3) the borrowers will keep the FSA advised as to the individual/entities to which they sold the farm operation products; and (4) compliance with payment terms.

On June 5, 2012, Defendant signed a Security Agreement. The FSA subsequently issued the loan. The loan amounts were $35,000 (Note 01) and $30,000 (Note 02). The terms of the loans were 1 year and 7 years respectively. The loan was approved at an interest rate of 1.25 percent. Defendant made one regular payment in the amount of $437 towards Note 01. Defendant made three regular payments in the amount of $437 each and one voluntary payment of $6,138.33 towards Note 02. Defendant defaulted on the remainder of each loan amount. Treasury offsets were applied to Note 02 until it was satisfied in full. An outstanding balance remains as to Note 01.

In the Security Agreement, Defendant claimed exclusive ownership over 15 specific pieces of farm equipment he previously listed in the Worksheet. The FSA appraised all the items listed in the Security Agreement as part of the loan application process. Defendant had no ownership interest in 12 out of the 15 items of farm equipment listed. Defendant knew at the time that he signed the Security Agreement that he had no ownership interest in 12 out of the 15 items listed. Those

5

12 farm equipment items were owned either solely by Defendant's father or jointly by Defendant's father and mother. Defendant came to an agreement with his father to list his father and mother's farm equipment for the purpose of influencing the Farm Service Agency ("FSA") to grant him a Farm Operating Loan. After reaching this agreement with his father, Defendant knowingly made these false statements on both the Worksheet and the Security Agreement for the purpose of influencing the FSA to grant him a Farm Operating Loan. Defendant's father is now deceased. Defendant did not inherit or receive the 12 items of farm equipment listed in the Security Agreement. Therefore, the pledged collateral cannot be made available to the FSA now that defendant defaulted on his loan.

10. <u>Dismissal of Other Charges</u>. The U.S. Attorney's Office agrees to move to dismiss the underlying Information against Defendant at the time of sentencing. Defendant agrees, however, that in determining the sentence the Court may consider the dismissed count in determining the applicable Sentencing Guidelines range, where the sentence should fall within the applicable guidelines range, and the propriety of any departure from the calculated guidelines range. By this agreement, Defendant does not concede that an increased sentence or an upward departure is, in fact, warranted.

11. <u>Acceptance of Responsibility</u>. The U.S. Attorney's Office agrees not to oppose Defendant's request for a two-level reduction of his offense level for acceptance of responsibility under Section 3E1.1(a) of the Sentencing Guidelines. However, the U.S. Attorney's Office reserves the right to object to Defendant's

request if it subsequently learns of conduct by Defendant that is inconsistent with the criteria set forth in the Commentary to Section 3E1.1.

12. <u>Non-Prosecution Agreement</u>. The U.S. Attorney's Office for the Western District of Michigan agrees, to dismiss the pending Information and, except for criminal tax violations (including conspiracy to commit such violations chargeable under 18 U.S.C. § 371), not to further prosecute Defendant for violations of Title 18, United States Code, Sections 371 and 1014 arising out of Defendant's false statements to the FSA for the purpose of influencing the FSA, violations of Title 18, United States Code, Section 1001 for false statements made to a federal agent, and violations of Title 18, United States Code, Section 658 for Defendant's conversion of livestock pledged as collateral to the FSA and was converted by Defendant for his own personal use and enjoyment before the date of this plea agreement without FSA's consent. Defendant understands that the U.S. Attorney's Office is free to prosecute Defendant for any other unlawful past conduct or any unlawful conduct that occurs after the date of this agreement.

13. <u>The Sentencing Guidelines</u>. Defendant understands that, although the United States Sentencing Guidelines (the "Guidelines") are not mandatory, the Court must consult the Guidelines and take them into account when sentencing Defendant. Defendant understands that the Court, with the aid of the presentence report, will determine the facts and calculations relevant to sentencing. Defendant understands that Defendant and Defendant's attorney will have the opportunity to review the presentence report and to make objections, suggestions, and

recommendations concerning the calculation of the Guideline range and the sentence to be imposed. Defendant further understands that the Court shall make the final determination of the Guideline range that applies in this case, and may impose a sentence within, above, or below the Guideline range, subject to the statutory maximum penalties described elsewhere in this Agreement. Defendant further understands that disagreement with the Guideline range or sentence shall not constitute a basis for withdrawal of the plea.

14. <u>There is No Agreement About the Final Sentencing Guidelines Range</u>. Defendant and the U.S. Attorney's Office have no agreement as to the applicable Sentencing Guidelines factors or the appropriate guideline range. Both parties reserve the right to seek any sentence within the statutory maximum, and to argue for any criminal history category and score, offense level, specific offense characteristics, adjustments and departures.

15. <u>Waiver of Statute of Limitations Defense</u>. By pleading guilty, Defendant gives up the right to persist in any defense that the relevant statute of limitations has expired for the allegations contained in the Superseding Information.

16. <u>Waiver of Constitutional Rights</u>. By pleading guilty, Defendant gives up the right to persist in a plea of not guilty and the right to a speedy and public trial by jury or by the Court. As a result of Defendant's guilty plea, there will be no trial. At any trial, whether by jury or by the Court, Defendant would have had the following rights:

a.     The right to the assistance of counsel, including, if Defendant could not afford an attorney, the right to have the Court appoint an attorney to represent Defendant.

b.     The right to be presumed innocent and to have the burden of proof placed on the Government to prove Defendant guilty beyond a reasonable doubt.

c.     The right to confront and cross-examine witnesses against Defendant.

d.     The right, if Defendant wished, to testify on Defendant's own behalf and present evidence in opposition to the charges, including the right to call witnesses and to subpoena those witnesses to testify.

e.     The right not to be compelled to testify, and, if Defendant chose not to testify or present evidence, to have that choice not be used against Defendant.

f.     By pleading guilty, Defendant also gives up any and all rights to pursue in this Court or on appeal any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

17.     <u>Waiver of Other Rights</u>.

a.     <u>Waiver</u>.  In exchange for the promises made by the government in entering this plea agreement, Defendant waives all rights to appeal or

collaterally attack Defendant's conviction, sentence, or any other matter relating to this prosecution, except as listed below.

b. <u>Exceptions.</u> Defendant may appeal or seek collateral relief to raise a claim, if otherwise permitted by law in such a proceeding, on the following grounds:

i. Defendant's sentence on any count of conviction exceeded the statutory maximum for that count;

ii. Defendant's sentence was based on an unconstitutional factor, such as race, religion, national origin, or gender;

iii. the guilty plea was involuntary or unknowing;

iv. an attorney who represented Defendant during the course of this criminal case provided ineffective assistance of counsel.

If Defendant appeals or seeks collateral relief, Defendant may not present any issue in the proceeding other than those described in this subparagraph.

18. <u>FOIA Requests.</u> Defendant hereby waives all rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including without limitation any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 552a.

19. <u>Hyde Waiver.</u> Defendant acknowledges, by his voluntary admission of guilt, that the position of the U.S. Attorney's Office in this case is not vexatious,

frivolous, or in bad faith, and Defendant hereby disclaims and waives any right to make any claim for attorney fees.

20. <u>The Court is not a Party to this Agreement</u>. Defendant understands that the Court is not a party to this agreement and is under no obligation to accept any recommendation by the U.S. Attorney's Office or the parties regarding the sentence to be imposed. Defendant further understands that, even if the Court ignores such a recommendation or imposes any sentence up to the maximum established by statute, Defendant cannot, for that reason, withdraw his guilty plea and he will remain bound to fulfill all of his obligations under this agreement. Defendant understands that no one—not the prosecutor, Defendant's attorney, or the Court—can make a binding prediction or promise regarding the sentence Defendant will receive, except that it will be within the statutory maximum.

21. <u>This Agreement is Limited to the Parties</u>. This agreement is limited to the U.S. Attorney's Office for the Western District of Michigan, and cannot bind any other federal, state or local prosecuting, administrative or regulatory authority. This agreement applies only to crimes committed by Defendant. This agreement does not apply to or preclude any past, present, or future forfeiture or civil actions.

22. <u>Consequences of Breach</u>. If Defendant breaches any provision of this agreement, whether before or after sentencing, the United States shall have the right to terminate this agreement or deny any or all benefits to which Defendant would otherwise be entitled under the terms of this agreement. In the event that the United States elects to terminate this agreement, the agreement shall be

considered null and void, and the parties shall return to the same position they were in prior to the execution of this agreement, as though no agreement ever existed. In such an event, Defendant shall remain liable for prosecution on all original charges, and the United States shall be free to bring such additional charges as the law and facts warrant. Defendant further agrees to waive and forever give up his right to raise any claim that such a prosecution is time-barred if the prosecution is brought within one (1) year of the breach that gives rise to the termination of this agreement.

23. <u>This is the Complete Agreement</u>. This agreement has been entered into by both sides freely, knowingly, and voluntarily, and it incorporates the complete understanding between the parties. No other promises have been made, nor may any additional agreements, understandings or conditions be entered into unless in a writing signed by all parties or on the record in open court.

24. <u>Deadline for Acceptance of Agreement</u>. If a copy of this agreement, executed by Defendant and defense counsel, is not returned to the U.S. Attorney's Office by 6/4/2021, this agreement will be withdrawn automatically and will thereafter have no legal effect or force, unless the U.S. Attorney's Office, in its sole discretion, chooses to accept an executed agreement after that date.

ANDREW BYERLY BIRGE
United States Attorney


June 7, 2021
_____
Date

/s/ Kristin M. Pinkston
_____
KRISTIN M. PINKSTON
Assistant United States Attorney

12

I have read this agreement and carefully discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. My attorney has advised me of my rights, of possible defenses, of the sentencing provisions, and of the consequences of entering into this agreement. No promises or inducements have been made to me other than those contained in this agreement. No one has threatened or forced me in any way to enter into this agreement. Finally, I am satisfied with the representation of my attorney in this matter.

6/6/2021
Date

BRENT MICHAEL EDINGTON,
Defendant

I am Defendant BRENT MICHAEL EDINGTON's attorney. I have carefully discussed every part of this agreement with my client. Further, I have fully advised my client of his rights, of possible defenses, of the sentencing provisions, and of the consequences of entering into this agreement. To my knowledge, my client's decision to enter into this agreement is an informed and voluntary one.

6/6/2021
Date

SANFORD SCHULMAN
Attorney for Defendant